IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GLENN ALEXANDER,

        Plaintiff,

vs.                                     Case No. 12-1106-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,[1]

        Defendant.

MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. <u>Glenn v. Shalala</u>, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue, the former Commissioner of Social Security.

scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or

mental impairment or impairments must be of such severity that they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If

the claimant survives step four, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

On September 23, 2010, administrative law judge (ALJ) Linda L. Sybrant issued her decision (R. at 11-28). Plaintiff alleges that he has been disabled since February 2, 2003 (R. at 11). Plaintiff is insured for disability insurance benefits through

4

December 31, 2008 (R. at 14). At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since plaintiff's alleged onset date (R. at 14). At step two, the ALJ found that plaintiff has the following severe impairments: medication rebound headaches secondary to his longstanding use of prescription narcotics and triptans for migraine headaches; and status post surgical procedures for left Lisfranc fracture and right medial malleolus fractures incurred in fall from a roof in April 2008. The ALJ further found that plaintiff had a nonsevere affective disorder diagnosed as a history of depression and/or bipolar disorder, and nonsevere mild sleep apnea (R. at 14). At step three, the ALJ found that plaintiff's medication rebound headaches due to his use of prescription narcotics for migraine headaches meets a listed impairment and results in a degree of limitation that is incompatible with the ability to work (R. at 18-19). Absent medication overuse, the ALJ found at step two that plaintiff would still have a severe combination of impairments: status post surgical procedures for left Lisfranc fracture and right medial malleolus fractures incurred in fall from a roof, in April 2008; migraine headaches, most likely occurring with a frequency consistent with the claimant's past demonstrated ability to maintain a work schedule; a nonsevere affective disorder diagnosed as history of depression and/or bipolar disorder; and nonsevere mild sleep

apnea (R. at 19). At step three, the ALJ determined that, if plaintiff stopped the medication overuse, he would not have an impairment that met or equaled a listed impairment (R. at 22). The ALJ then determined that plaintiff's RFC, absent medication overuse, would be limited to light work up to the intermediate skill level (R. at 23). At step four, the ALJ found that plaintiff would not be able to perform past relevant work (R. at 27). At step five, the ALJ determined that plaintiff could perform a significant number of jobs in the national economy (R. at 27). The ALJ concluded that because plaintiff would not be disabled if he stopped the substance use, plaintiff's substance use disorder is a contributing factor material to the determination of disability (R. at 28).

**III. Did substantial evidence support the finding of the ALJ that plaintiff's substance use is a contributing factor material to the determination of disability, and therefore plaintiff would not be disabled if he stopped substance use?**

In 1996, Congress passed Public Law 104-121. It added the following language to 42 U.S.C. § 423(d)(2):

> (C) An individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled.

20 C.F.R. § 404.1535 (disability insurance) and § 416.935 (SSI) are identical, and are the implementing regulations governing this issue. The implementing regulations make clear that a finding of disability is a condition precedent to an application of §423(d)(2)(C). The Commissioner must first make a determination that the claimant is disabled. He must then make a determination whether the claimant would still be found disabled if he or she stopped abusing alcohol or drugs. If so, then the alcohol or drug use is not a contributing factor material to the finding of disability. If however, the claimant's remaining impairments would not be disabling without the alcohol or drug abuse, then the alcohol or drug abuse is a contributing factor material to the finding of disability. The ALJ cannot begin to apply §423(d)(2)(C) properly when he has not yet made a finding of disability. Drapeau v. Massanari, 255 F.3d 1211, 1214-1215 (10th Cir. 2001). In other words, an ALJ must first conduct the five-step inquiry without separating out the impact of alcoholism or drug addiction. If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the claimant is not entitled to benefits and there is no need to proceed with the analysis under §§ 404.1535 or 416.935. If the ALJ finds that the claimant is disabled and there is medical evidence of his or her drug addiction or alcoholism, then the ALJ should proceed under §§ 404.1535 or 416.935 to

7

determine if the claimant would still be found disabled if he or she stopped using alcohol or drugs. Bustamante v. Massanari, 262 F.3d 949, 955 (9th Cir. 2001).

Plaintiff argues that there are two deficiencies with the ALJ's finding that plaintiff's disability would cease if he stopped taking medications. First, plaintiff contends that the preponderance of the evidence does not support her conclusion that plaintiff suffers from medication overuse migraines. Second, even if that finding is valid, plaintiff further contends that the ALJ improperly determined that plaintiff's medication overuse was material.

Plaintiff's first argument is that the evidence does not support the ALJ's conclusion that plaintiff suffers from medication overuse headaches or migraines (a/k/a rebound headaches, R. at 18). Dr. Winkler testified that plaintiff suffered from medication overuse headaches, and explained in some detail his basis for this finding (R. at 77-81). The ALJ gave great weight to the testimony and findings of Dr. Winkler (R. at 26-27). The ALJ and Dr. Winkler noted that Dr. Noah Pierson, a treating physician, indicated in his treatment notes on April 14, 2005 that plaintiff was "in rebound" (R. at 16, 78, 442). Dr. Pierson further noted on June 3, 2005 the following: "high risk rebound patient" (R. at 16, 441). The ALJ decision

8

and the testimony of Dr. Winkler set out in detail plaintiff's overuse of medications for migraines (R. at 14-19, 77-81).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court finds that the testimony of Dr. Winkler and the citations to the medical record by Dr. Winkler and the ALJ, including the references by a treating physician, Dr. Pierson, that plaintiff was in rebound or a high-risk rebound patient provides substantial evidence to support the finding of the ALJ that plaintiff suffers from medication overuse headaches/migraines or rebound headaches.

The next issue to be addressed is whether plaintiff would still be disabled absent medication overuse headaches/migraines. Plaintiff contends that the ALJ's finding of materiality was flawed because the record lacked any assessment of plaintiff's limitations absent substance abuse (Doc. 7 at 17). In the case of Salazar v. Barnhart, 468 F.3d 615 (10th Cir. 2006), the court

9

referred to a teletype sent out by the Commissioner which pertains to Pub. L. 104-121. The court summarized portions of the teletype as follows:

> Shortly after the law [Pub. L. 104-121] was amended, the Commissioner sent out a teletype on applying the new law, which speaks to situations where a claimant has one or more other mental impairments in addition to DAA [drug addiction or alcoholism]. It stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is not a contributing factor material to the disability determination.
>
> ..........
>
> With regard to the materiality finding, the Commissioner's teletype further directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is not a contributing factor material to the disability determination.
>
> ..........
>
> Further, the Commissioner's teletype instructs that where the record is devoid of any medical or psychological report, opinion, or projection as to the claimant's remaining limitations if she stopped using drugs or alcohol, an ALJ should "find that DAA is not a contributing factor material to the determination of disability."

Salazar, 468 F.3d at 623, 624.

As in Salazar, the ALJ in the case before the court does not, in support of his assertion that plaintiff is not disabled

10

absent consideration of his substance use, cite to any medical report, opinion, or projection as to plaintiff's remaining physical and mental limitations if he stopped overusing medications, but still had a severe impairment of migraine headaches. There is no medical opinion in the record to support the ALJ's finding that plaintiff, absent the medication overuse, but with a severe impairment of migraine headaches, would have the RFC to perform light work up to the intermediate skill level. The court will address the medical opinions which defendant argues support the ALJ's RFC findings (Doc. 12 at 9-11).

The ALJ noted the opinion of Dr. Barnett, a psychologist, who opined on November 19, 2007 that plaintiff would not be cognitively limited in a manner that would interfere with employment (R. at 514-516). The ALJ accorded this opinion "some" weight to the extent that it is descriptive of plaintiff's functioning on a day when he was not having a medication overuse headache (R. at 25).[2] [3]

---

[2] Dr. Barnett's report indicates that plaintiff stated that he had migraine headaches 3-4 times a week (R. at 516).

[3] Not mentioned by the ALJ was a medical source statement-mental by a treating medical source, Dr. Schrader, who opined that plaintiff was markedly limited in 10 categories, and extremely limited in 8 categories (R. at 615-616). An ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004). This rule was recently described as a "well-known and overarching requirement." Martinez v. Astrue, 2011 WL 1549517 at *4 (10th Cir. Apr. 26, 2011). Even on issues reserved to the Commissioner, including plaintiff's RFC and the ultimate issue of disability, opinions from any medical source must be carefully considered and must never be ignored. Social Security Ruling (SSR) 96-5p, 1996 WL 374183 at *2-3. The ALJ "will" evaluate every medical opinion that they receive, and will consider a number of factors in deciding the weight to give to any medical opinion. 20 C.F.R. §§ 404.1527(c), 416.927(c). It is clear legal error to ignore a medical opinion. Victory v. Barnhart, 121 Fed. Appx. 819, 825 (10th Cir. Feb. 4, 2005). Furthermore, according to SSR 96-8p, the ALJ must

11

A treating physician, Dr. Schrader, prepared a medical source statement-physical, setting forth plaintiff's limitations absent migraine headaches (R. at 618-619). The ALJ only accorded "some" weight to this opinion (R. at 26). In fact, the ALJ rejected Dr. Schrader's opinion that plaintiff could perform heavy work, and limited him to light work, as defined in 20 C.F.R. § 404.1567(b). However, the ALJ, without explanation, did not include Dr. Schrader's opinion that plaintiff could only stand/walk for 3 hours in an 8 hour workday. To be considered capable of performing a full or wide range of light work, one must have the ability to perform substantially all of the activities set out in this regulation, including a "good deal of walking or standing." Dr. Schrader's opinion appears to preclude a good deal of walking or standing.

Furthermore, the ALJ did not include most of the postural, manipulative, environmental, or mental limitations included in Dr. Schrader's assessment. Inexplicably, even though the ALJ gave "great weight" to Dr. Winkler's testimony (R. at 26), the ALJ rejected many of the limitations in Dr. Schrader's assessment despite the fact that Dr. Winkler agreed with the assessment by Dr. Schrader (R. at 84).

---

consider and address medical source opinions, and when the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted. 1996 WL 374184 at *7. Although this issue was not raised by the parties, because this case is being reversed and remanded for other reasons, it will be addressed in order to forestall the repetition of avoidable error. Chapo v. Astrue, 682 F.3d 1285, 1292 (10th Cir. 2012).

In addition, reliance on Dr. Schrader's assessment would be problematic because, absent medication overuse, the ALJ nonetheless found that plaintiff would continue to have a severe impairment of migraine headaches. However, Dr. Schrader's assessment is premised on the absence of migraine headaches. Defendant notes in her brief that Dr. Winkler testified that, absent medication overuse, it may well be possible to keep plaintiff's headaches/migraines down to a point where they would not be at a severe level (R. at 82; Doc. 12 at 10). However, the ALJ, as noted above, found that plaintiff would continue to have a severe impairment of migraine headaches (R. at 19).

Dr. Winkler testified that according to "diagnostic criteria," it would be anticipated that the headache would resolve or revert to its previous pattern within two months after discontinuation of medication (R. at 80-81). However, Dr. Winkler further testified that he could not tell from the medical record what would be the severity of the headaches without the overuse of medications; he noted he could not see a period of time where one could judge how the headaches would behave in the absence of overuse (R. at 81-82). Dr. Winkler, when asked about the opinion of Dr. Clark that plaintiff would miss work more than four times a month because of his impairments, testified that once medication overuse terminated, he did not know how often plaintiff would miss work (R. at 85).

13

Dr. Winkler indicated that to what extent and how good the control of headaches would be once the medication overuse is out of the way is "not possible to know right now because we don't have any basis for evaluating that" (R. at 85).

Most importantly, Dr. Winkler never testified regarding plaintiff's limitations absent medication overuse. Dr. Winkler's testimony provides no support for any of the ALJ's RFC findings.

When the record is devoid of any medical or psychological report, opinion or projection as to a claimant's remaining physical and mental limitations if he/she stopped using drugs or alcohol, the ALJ should find that DAA is not a contributing factor material to the determination of disability. Salazar, 468 F.3d at 624, 625. In the absence of any assessment regarding plaintiff's physical and mental limitations in the absence of his/her DAA, but with a severe impairment of migraine headaches, substantial evidence does not support the ALJ's RFC findings.[4]

IT IS THEREFORE ORDERED that the judgment of the Commissioner is reversed and remanded pursuant to sentence four

---

[4] The ALJ found that, without medication overuse, his remaining severe impairment of migraine headaches would most likely occur with a frequency consistent with plaintiff's past demonstrated ability to work (R. at 19). However, Dr. Winkler never testified that, without medication overuse, plaintiff's migraine headaches would most likely occur with a frequency consistent with plaintiff's past demonstrated ability to work, and the ALJ does not cite to any other medical evidence in support of this finding.

of 42 U.S.C. § 405(g) for further proceedings consistent with this memorandum and order.

Dated this 24th day of July, 2013, Topeka, Kansas.

s/ Sam A. Crow
Sam A. Crow, U.S. District Senior Judge